**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION**

| | |
|---|---|
| ELITE ENTERPRISES, INC., ) | |
| ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Cause No. 1:04-CV-94 |
| ) | |
| ASC, INC., ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

The Defendant and Counterclaim Plaintiff, ASC, Inc., asks that the Court award it attorney's fees incurred in connection with its three motions to compel filed April 3, 2006, and argued April 21, 2006. The Plaintiff and Counterclaim Defendant, Elite Enterprises, Inc., does not dispute that ASC is entitled to some fees under Federal Rule of Civil Procedure 37(a)(4), but challenges the reasonableness of the $4,638.50 documented by ASC's counsel. In short, Elite contends that ASC has failed to establish the reasonableness of both the hourly rates of ASC's counsel, as well as the reasonableness of the hours they claim they expended on the motions.

As will be revealed later, however, ASC has demonstrated that these are standard hourly rates and neither Elite nor Geist has presented evidence that calls for a reduction. And as for the 14.5 hours expended by counsel in pursuing the motions to compel, we think that with two minor exceptions the hours were reasonable.

Therefore, for the following reasons, ASC's fee petition (DE # 69) will be granted in part and denied in part.

### I. FACTUAL AND PROCEDURAL BACKGROUND

The factual and procedural background surrounding the current dispute can be briefly

summarized. In essence, ASC served Elite with interrogatories and requests for production of documents on October 19, 2005, and despite promises that the discovery would be forthcoming, the responses not only were late, but inadequate, as detailed in ASC's Motion to Compel. (*See* DE # 52.)

Similarly, Elite's counsel promised to respond to ASC's second set of interrogatories and second request for production of documents, served February 22, 2006, but these too were delayed, apparently due to some difficulty in obtaining the attention of Elite's Chairman, Randall Geist. When it became apparent to ASC that even with agreed extensions Elite's responses were going to be late, it filed another Motion to Compel. (DE # 57.)

Finally, ASC filed a Motion to Compel (DE # 54) directed to Geist's tardy response to the interrogatories and request for production of documents served on him on February 22, 2006.

In each of the Motions to Compel, ASC sought attorney fees under Federal Rule of Civil Procedure 37(a)(4). In fact, the question of ASC's attorney fees is all that remains of the current dispute, because both Elite and Geist finally served discovery responses after the motions were filed and before the April 21, 2006, hearing. Elite offers little argument about ASC's discovery requests, alleging for instance, that only minimal, additional documents were produced by the process. (Resp. of Pl., Elite Enterprises, Inc. & Counter-Def. Randall Geist, to Mots. to Compel Discovery 2.) Nevertheless, Elite conceded in its response, and again at the hearing (along with Geist) that the discovery responses were overdue. (*See* Resp. 3.)

These unavoidable concessions lead to the argument Elite and Geist are forced into: that although ASC is entitled to attorney fees under Federal Rule of Civil Procedure 37(a)(4), the amount it is seeking is unreasonable. We now turn to that issue.

2

## II. LEGAL STANDARD

Rule 37(a)(4) governs the imposition of expenses and sanctions related to a motion to compel. It provides, in part:

> (A) [I]f the disclosure or requested discovery is provided after the motion was filed, the court shall, after affording an opportunity to be heard, require the party . . . whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay the moving party the reasonable expenses incurred in making the motion, including attorney's fees, unless the court finds . . . that the opposing party's nondisclosure, response, or objection was substantially justified, or that other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(a)(4). This Rule "presumptively requires every loser to make good the victor's costs." *Rickels v. City of South Bend*, 33 F.3d 785, 786 (7th Cir. 1994). Such fee-shifting "encourages . . . voluntary resolution" of discovery disputes and "curtails the ability of litigants to use legal processes to heap detriments on adversaries (or third parties) without regard to the merits of the claims." *Id.* at 787.

Accordingly, a party "may not avoid sanctions merely by producing the documents after a motion [to compel] has been filed," since this would defeat the rule's purpose "to promote voluntary discovery without the need for motion practice." *Illinois Tool Works, Inc. v. Metro Mark Prods., Ltd.*, 43 F. Supp. 2d 951, 960 (N.D. Ill. 1999); *see also Johnson v. Fed. Express Corp.*, No. IP 99-1377-C-Y/K, 2002 WL 362753, at *3 (S.D. Ind. March 6, 2002). Therefore, the late-producer pays unless he establishes that his failure to produce in a timely fashion was substantially justified. *See Illinois Tool Works, Inc.*, 43 F. Supp. 2d at 960, 962 (quoting *Fautek v. Montgomery Ward & Co.*, 96 F.R.D. 141, 145 (N.D. Ill. 1982)) ("Ultimate production of the material in question does not absolve a party where it has failed to produce the material in a timely fashion.").

Since neither Elite nor Geist argue that their tardiness was substantially justified, we move on to the real issue here: whether the amount of attorney fees sought by ASC is reasonable. In that regard, we apply a familiar standard, the so-called "lodestar" method, to determine a reasonable amount of fees. *See, e.g.*, *People Who Care v. Rockford Bd. of Educ.*, 90 F.3d 1307, 1310 (7th Cir. 1996); *Hensley v. Eckerhart*, 461 U.S. 424, 433-37 (1983). Under this method, the court first determines the "lodestar" by multiplying the hours reasonably expended on the case by a reasonable hourly rate. *People Who Care*, 90 F.3d at 1310. The court may then adjust this award based on various factors, *see id.* at 1310 n.1, the "most critical" of which is the degree of success obtained by the movant, *Hensley*, 461 U.S. at 436. The movant bears the initial burden of documenting its fees to the satisfaction of the court; once it has done so, those fees are presumptively appropriate unless challenged by the opposing party. *Morales v. Jones*, No. 00-CV-0618-DRH, 2006 WL 268770, at *10 (E.D. Wis. Feb. 1, 2006) (citing *Tomazzoli v. Sheedy*, 804 F.2d 93, 96 (7th Cir. 1986)).

### III. DISCUSSION

Elite and Geist first complain that attorney Jackson, ASC's counsel in Fort Wayne, Indiana, failed to submit evidence that what he charged here, $455.00 per hour, is his standard hourly rate or that such a rate is reasonable in the Fort Wayne legal community. (Mem. in Opp'n to Mot. for Attorney's Fees 2.) Similarly, Elite and Geist argue that attorney Jackson's Philadelphia co-counsel, attorney Helderman, failed to show that his standard rate of $300.00 per hour is reasonable for litigators in Fort Wayne, Indiana. (Mem. in Opp'n 2.)

The Seventh Circuit has provided a framework for responding to these arguments; and we begin by noting that an attorney's actual billing rate for comparable work is "presumptively

4

appropriate" to use as the market rate. *People Who Care*, 90 F.3d at 1310; *Gusman v. Unisys Corp.*, 986 F.2d 1146, 1151 (7th Cir. 1993). In this instance we know the standard rates of all the attorneys who billed ASC for pursuing this discovery because they are catalogued in attorney Helderman's affidavit. (Affidavit of Alexander S. Helderman in Supp. of Def. & Counterclaim Pl. ASC, Inc.'s Fee Pet. & Mots. to Compel Discovery Resps. ¶¶ 4-5.)[1]

Since the rates are therefore "presumptively appropriate" this shifts the burden to Elite and Geist to present evidence establishing "a good reason why a lower rate is essential." *People Who Care*, 90 F.3d at 1313. We have nothing in the record, however, that suggests either that a lower rate is essential or what that lower rate should be.

At most Elite and Geist offer the argument that attorney Helderman should not charge Philadelphia rates for a Fort Wayne case, but that does not square with the general rule, that in those instances when "an out-of-town attorney has a higher hourly rate than local practitioners, district courts should defer to the out-of-town attorney's rate when evaluating" the reasonableness of the rate sought. *People Who Care*, 90 F.3d at 1311; *Mathur v. Bd. of Trs. of S. Ill. Univ.*, 317 F.3d 738, 743-44 (7th Cir. 2003); *see also Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 551 (7th Cir.1999). Moreover, in this instance, attorney Jackson, the local attorney charging the local rate, has a higher hourly rate than any of the Philadelphia attorneys, so the premise of the argument does not provide Elite and Geist with any relief.

Moreover, because attorney Jackson's hourly rate exceeds what Philadelphia attorneys charge, we do not encounter one recognized exception to the general rule: that the local rate

---

[1] Two other attorneys besides Mr. Jackson and Mr. Helderman are listed in the affidavit as having performed work on the motions to compel, but their involvement was minimal and neither Elite nor Geist take issue with those hours or the rate listed.

(presumably lower) should apply when it is not shown that out-of-town attorneys were needed to obtain success. *Mathur*, 317 F.3d at 743-44 (citing *Chrapliwy v. Uniroyal*, 670 F.2d 760, 768 (7th Cir. 1982)).

Consequently, the hourly rates charged in filing and pursuing ASC's motions to compel will be allowed.

Elite and Geist also challenge the reasonableness of the 14.5 hours the attorneys claim, although the actual hours it finds fault with are remarkably few.

First, Elite and Geist quibble over attorney Jackson taking .7 hours to review and respond to an e-mail regarding discovery. As Elite and Geist see it, "[t]here has been absolutely no showing that Mr. Jackson was in any way involved with either propounding the discovery in this case, or preparing and filing the Motions to Compel." (Mem. in Opp'n 2.) In reply, ASC suggests that attorney Jackson was actually engaged in reviewing the Motions to Compel before they were submitted to the Court. (Reply in Supp. of Fee Pet. of Def. & Counterclaim Pl. ASC, Inc. 4.) Of course, if Mr. Jackson truly read through all three motions and briefs before they were filed, then .7 hours was clearly reasonable. If, on the other hand, Mr. Jackson was only engaged in reading and responding to an e-mail message, as his time records seem to suggest, then forty-two minutes (.7 x 60 minutes = 42 minutes) seems a bit excessive. The problem here is that the time record is vague on the point, and is subject to reduction accordingly. *Ohio-Sealy Mattress Mfg. Co. v. Sealy Inc.*, 776 F.2d 646, 656 (7th Cir. 1985) (affirming reduction of hours where fee petitions were "vague, inconsistent, and lacking adequate identification of hours"). Accordingly, the court will reduce the "4/30/06" entry of attorney Jackson from .7 hours to .2 hours.

Elite and Geist also challenge Mr. Jackson's entry of "4/11/06" wherein he logged .5

6

hours to "[r]eview email from court setting motion hearing." This entry presumably refers to the Court's Order of April 10, 2006, setting the various motions for hearing on April 21, 2006, and establishing a briefing schedule. Reading that order and calendaring the dates should not have taken .5 hours, and the Court, therefore, reduces the time to .2 hours accordingly.

Elite and Geist also take issue with attorney Helderman taking 3.2 hours to review the discovery produced prior to the April 21 hearing, arguing that that process would have been undertaken in any event. This position overlooks, of course, that the admittedly tardy production occurred just before the April 21 hearing and that ASC clearly needed to be in a position to inform the Court whether the motions still needed to be ruled upon. Consequently, we think the time expended by attorney Helderman was reasonable under the circumstances.

Finally, we reach the final argument expressed by Elite and Geist: that an award of attorney fees in excess of $4,000.00 is simply out of proportion to the amount of work necessary to require them to meet their discovery obligations. The point that is missed with this argument is that no amount of work should have been required to get Elite and Geist to meet their obligations under the Federal Rules; indeed, instead of necessary diligence, the record reflects, at least, some nonchalance on the part of Elite and Geist in meeting their responsibilities. And this is no small case, as witnessed by Elite's Complaint seeking hundreds of thousands of dollars from ASC, so this discovery award is certainly proportional if put on that scale.

In sum, Elite and Geist have failed to show or argue that any of the so-called *Hensley* factors apply, and because those are otherwise subsumed in the lodestar, no further reduction will be imposed. *People Who Care*, 90 F.3d at 1310. Accordingly, the lodestar calculation conducted here yields a deduction of .8 hours from Mr. Jackson's total hours (for a downward

adjustment of $364.00 from the overall $4,638.50 sought); therefore the Petition for Fees should be granted in the total amount of $4,274.50.

## IV. CONCLUSION

ASC's attorney fee petition (DE # 69) is granted in part and denied in part. ASC is awarded attorney fees in the amount of $4,274.50.  The Motions to Compel are to be shown terminated. SO ORDERED.

Enter for May 30, 2006.

S/Roger B. Cosbey
Roger B. Cosbey,
United States Magistrate Judge